UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                    :
DRC EMERGENCY SERVICES, LLC,                        :
                                                    :        Civil Action No.: 1:15-cv-01000-RA
                    Plaintiff,                       :
                                                    :
        -against-                                   :
                                                    :
CAHABA DISASTER RECOVERY, LLC                       :
and STEWART G. FUZZELL, JR.,                        :
                                                    :
                    Defendants.                     :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

**TROUTMAN SANDERS LLP**
The Chrysler Building
405 Lexington Avenue
New York, NY  10174-0700
Tel: (212) 704-6000

*Counsel for DRC Emergency Services, LLC*

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND................................................................................................... 2

ARGUMENT ............................................................................................................................ 6

     I.  DRC's Replevin Claims Are Not Compulsory Counterclaims In The Entirely
         Unrelated Alabama Action Concerning Fuzzell's Alleged Ownership
         Interests In DRC ................................................................................................ 6

     II.  Defendants' Compulsory Counterclaims Argument Is Procedurally Inapposite
         Because DRC May Never Have To Assert Counterclaims In The Alabama
         Action................................................................................................................. 9

     III.  The "First-Filed" Rule Is Inapplicable Because This Replevin Lawsuit Is
         Entirely Different From The Alabama Action..................................................... 9

     IV.  The Mandatory Forum Selection Clause Is Valid And Enforceable And Thus
         Requires That Defendants Litigate This Lawsuit In This Court.......................... 11

     V.  Defendants Failed To Meet Their Legal Burden To Show That Venue Is
         Improper In This Court ....................................................................................... 14

CONCLUSION....................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Coblentz G.M.C. Truck Sales*,
    506 So. 2d 1023 (Ala. Civ. App. 1987) ....................................................8

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
    585 F.3d 696 (2d Cir. 2009)........................................................................13

*Akin v. PAFEC, Ltd.*,
    991 F.2d 1550 (11th Cir. 1993) ................................................................7

*Arista Records LLC v. Doe*,
    604 F.3d 110 (2d Cir. 2010)........................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................12

*Barbara v. New York Stock Exch., Inc.*,
    99 F.3d 49 (2d Cir. 1996) ..........................................................................9

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007)..............................................................................12, 13

*Bense v. Interstate Battery Sys of Am., Inc.*,
    683 F.2d 718 (2d Cir. 1982)..................................................................11, 15

*Bonadio v. East Park Research, Inc.*,
    220 F.R.D. 187 (N.D.N.Y 2003)...............................................................11

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976).....................................................................................9

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
    893 F.2d 26 (2d Cir. 1990)..........................................................................6

*Desroches v. Ryder Truck Rental, Inc.*,
    429 So. 2d 1010 (Ala. 1983) ......................................................................8

*Ex parte Cincinnati Ins. Cos.*,
    806 So. 2d 376 (Ala. 2001).........................................................................7

*Export-Import Bank of the United States v. Agricola del Mar BCS, S.A. de C.V.*,
    536 F. Supp. 2d 345 (S.D.N.Y. 2008).....................................................14

*Factors Etc., Inc. v. Pro Arts, Inc.*,
  579 F.2d 215 (2d Cir. 1978), *cert. denied*, 440 U.S. 908 (1979)............................................14

*Grow Grp., Inc. v. Indus. Corrosion Control, Inc.*,
  601 So. 2d 934 (Ala. 1992) ......................................................................................................7

*Gulf Ins. Co. v. Glasbrenner*,
  417 F.3d 353 (2d Cir. 2005).....................................................................................................14

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947).................................................................................................................15

*Jackson v. Am. Brokers Conduit*,
  No. 09-cv-6045, 2010 U.S. Dist. LEXIS 49008 (S.D.N.Y. May 13, 2010) ...........................14

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972)....................................................................................................................11

*Magi XXI, Inc. v. Stato della Città del Vaticano*,
  714 F.3d 714 (2d Cir. 2013).....................................................................................................12

*Metro-Goldwyn-Mayer Studios Inc. v. Canal+ Distrib. S.A.S.*,
  No. 07 Civ. 2918, 2010 U.S. dist. LEXIS 12765 (S.D.N.Y. Feb. 5, 2010) ...........................13

*Nat'l Patent Dev. Corp. v. Am. Hospital Supply Corp.*,
  616 F. Supp. 114 (S.D.N.Y. 1984)...........................................................................................15

*Nat'l Union Fire Ins. Co. v. Las Vegas Prof'l Football L.P.*,
  409 F. App'x 401 (2d Cir. 2010) .............................................................................................10

*New Moon Shipping Co. v. MAN B&W Diesel AG*,
  121 F.3d 24 (2d Cir. 1997).......................................................................................................12

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
  599 F.3d 102 (2d Cir. 2010).....................................................................................................11

*Philips v. Audio Active Ltd.*,
  494 F.3d 378 (2d Cir. 2007).....................................................................................................12

*S. Constr. Co. v. United States ex rel. Pickard*,
  371 U.S. 57 (1962)....................................................................................................................6

*Sotheby's, Inc. v. Minor*,
  No. 08 Civ. 7694, 2009 U.S. Dist. LEXIS 3509 (S.D.N.Y. Jan. 6, 2009)...............................10

*Stewart Org., Inc. v. Ricoh Corp.*
  487 U.S. 22 (1988)...................................................................................................................15

*Thibodeau v. Pinnacle FX Inv.*,
    No. 08-CV-1662, 2008 U.S. Dist. LEXIS 90440 (E.D.N.Y. Nov. 6, 2008)............................13

*Thompson v. Carter*,
    284 F.3d 411 (2d Cir. 2002)...........................................................................................9

*TradeComet.com LLC v. Google, Inc.*,
    647 F.3d 472 (2d Cir. 2011)..........................................................................................11

*United States EPA ex rel. McKeown v. Port Auth.*,
    162 F. Supp. 2d 173 (S.D.N.Y. 2001), *aff'd*, 23 F. App'x 81 (2d Cir. 2001)..........................14

*Weingrad v. Telepathy, Inc.*,
    No. 05 Civ. 2024, 2005 U.S. Dist. LEXIS 26952 (S.D.N.Y. Nov. 3, 2005) ..........................13

*Weiss v. Columbia Pictures Television Inc.*,
    801 F. Supp. 1276 (S.D.N.Y. 1992)................................................................................14

## OTHER AUTHORITIES

Ala. R. Civ. P. 13(a)........................................................................................................6, 8

Fed. R. Civ. P. 12(b)......................................................................................................9, 14

Fed. R. Civ. P. 13(a) ....................................................................................................6, 8 9

3-13 Moore's Fed. Practice - Civil § 13.15 (3d ed. 1997) ................................................9

Plaintiff DRC Emergency Services, LLC ("Plaintiff" or "DRC") respectfully submits this memorandum of law in opposition to Defendants Cahaba Disaster Recovery, LLC ("Cahaba") and Stewart G. Fuzzell, Jr.'s ("Fuzzell" and together with Cahaba, "Defendants") Motion to Dismiss the Complaint.

## PRELIMINARY STATEMENT

Defendants' Motion to Dismiss fails for two overarching reasons.  First, Defendants ignore several key allegations of the Complaint in an attempt to fold this lawsuit into an entirely different litigation pending in Alabama state court.   Defendants' Motion to Dismiss does not discuss, let alone dispute, that this lawsuit is an action for replevin to recover vehicles, boats, machinery and equipment owned by DRC worth in excess $1,300,000.00 that are wrongfully in Defendants' possession.  (Compl. ¶ 8).  The Alabama state court action does not at all concern the property at issue here or Defendants' wrongful possession of that property; nor can Defendants suggest otherwise.

Second, Defendants do not dispute, and the Complaint clearly alleges, that Defendant Fuzzell, who is the sole member of Defendant Cahaba, "irrevocably agreed to the jurisdiction and venue of the state and federal court located in New York, New York." (Compl. ¶ 8). Fuzzell's express, written agreement to litigate only in New York is contained in an Assignment Agreement and Release (the "Release"), which is specifically identified and described in paragraphs 20-21 of the Complaint and which we respectfully submit to the Court as Exhibit A to the Declaration of Matthew J. Aaronson, Esq. dated April 23, 2015 ["Aaronson Decl."] filed herewith.

The Release states:

> **[A]ny action**, claim, complaint, demand, grievance, citation, summons, subpoena, inquiry, hearing, litigation, suit or proceeding . . . arising out of or **in any way relating** *to* this Agreement . . . **shall** be brought or enforced

> in the state or federal courts located **in New York, New York** … [Each party] irrevocably waives . . . any objection which it may not [sic] or hereafter have to the venue of any Proceeding being brought in New York, New York and further irrevocably waives any claims that any such Proceeding has been brought in an inconvenient forum.

(Compl. ¶¶ 20-21; Aaronson Decl., Ex. A., § 6 (emphasis added).

Defendants' argument that Plaintiff failed to "identify" the Release is erroneous, and their motion thus fails.

## FACTUAL BACKGROUND

Plaintiff DRC is one of the leading disaster management and civil construction groups in the United States, providing emergency preparation, response and recovery from major catastrophes throughout the Country.  (Compl. ¶ 9).  Defendant Cahaba—an entity owned by Defendant Fuzzell, who is also Cahaba's sole member—is engaged in the disaster recovery business.  (Compl. ¶¶ 6, 11).

In early 2013, Fuzzell and his partner, non-party Luther S. Pate, IV ("Pate"), purchased DRC and other related entities.  (Compl. ¶ 12).  The purchase was financed by a $15 million loan (the "Loan") provided primarily by BNY Mellon-Alcentra Mezzanine III, L.P.  ("Alcentra").  (Compl. ¶¶ 12, 18).

To secure the Loan, Fuzzell and Pate personally guaranteed the Loan and also pledged their equity interests in DRC as collateral.  (Compl. ¶ 18).  Pursuant to an Interim Services Agreement, dated January 11, 2013, between Cahaba and DRC and acknowledged by Fuzzell, Cahaba agreed that, on or before March 31, 2013, all of Cahaba's equipment, vehicles and personnel "shall be contributed to, transferred to or otherwise acquired by, [DRC]."  (Compl. ¶ 14).

## The Default And The Release

Approximately six months after the acquisition, the borrowers (*i.e.*, DRC in the first instance, and Pate and Fuzzell as guarantors) defaulted on the Loan (the "Default").  (Compl. ¶

19).  Subsequent to the Default, on or around November 4, 2013, Fuzzell executed the Release.

(Compl. ¶ 20).

> Section 6 of the Release provides:
>
> Each of the Parties hereby irrevocably agrees that any action, claim, complaint, demand, grievance, citation, summons, subpoena, inquiry, hearing, litigation, suit or proceeding (collectively, a "Proceeding") against it **arising out of or in any way relating to this Agreement**, or any judgment entered by any court in respect thereof, shall be brought or enforced in the state or federal courts located in New York, New York and each Party hereby irrevocably waives, to the fullest extent permitted by law, any objection which it may not [sic] or hereafter have to the venue of any Proceeding brought in New York, New York and further irrevocably waives any claims that any such Proceeding has been brought in an inconvenient forum.

(Aaronson Decl., Ex. A) (emphasis added).

Pursuant to the Release, Fuzzell conveyed his entire ownership interest in DRC to Alcentra and Alcentra released Fuzzell and Pate from their personal obligation to repay the Loan. (Compl. ¶20).  As of November 4, 2013, Alcentra and its co-lender United Insurance Company of America owned 100% of DRC.  (*Id.*).  Fuzzell continued to be employed as an executive of DRC until his employment was terminated on September 2, 2014.  (Compl. ¶ 21).

**<u>Defendants' Wrongful Possession Of The Subject Vehicles And Equipment</u>**

As required under the Interim Services Agreement, pursuant to a Bill of Sale dated March 27, 2013 (the "Bill of Sale"), Cahaba sold, transferred and delivered all of its vehicles and equipment to Equipment Leasing, LLC ("EL"), an affiliate of DRC.  (Compl. ¶¶ 15-16).  While ownership of the Subject Vehicles[1] and Equipment were transferred to EL, the Subject Vehicles and Equipment remained in Defendants' possession, custody and control and were located at

---

[1] All terms not defined herein shall be ascribed the same meaning as in the Complaint [Dkt. No. 1].

3

various properties owned or controlled by Defendants (Compl. ¶ 15).[2]  On July 21, 2014, EL was merged into DRC.  (Compl. ¶¶ 22-29).

Following the termination of Fuzzell's employment, during the week of September 22, 2014, DRC was in the process of moving its equipment and vehicles from a storage yard owned by Fuzzell located at 14835 Old Pascagoula Rd, Grand Bay, Alabama (the "Grand Bay Yard"). (Compl. ¶ 23).  After DRC had moved several pieces of equipment from the Grand Bay Yard to a secure location, Defendants locked the gate to the Grand Bay Yard and advised DRC that it was no longer permitted to enter the property to move any other vehicles or equipment.  (Compl. ¶¶ 23-25).  Following these actions, DRC has been unable to recover possession of the Subject Vehicles and Equipment.  (Compl. ¶ 27).

In addition to the Subject Vehicles and Equipment, Fuzzell is also in possession of a 2014 GMC Yukon Denali (VIN# 1GKS2EEF0ER206052) owned by DRC.  (Compl. ¶¶ 28-30).  Prior to the termination of Fuzzell's employment by DRC, Fuzzell was permitted to drive the GMC Yukon to perform his duties and responsibilities for DRC.  (Compl. ¶ 29).  Following the termination of his employment, Fuzzell refused to return the GMC Yukon to DRC.  (Compl. ¶¶ 29-30).

**The Alabama Action**

On October 7, 2014, Fuzzell filed a complaint against DRC, Alcentra, and Scott B. Gold in the Circuit Court of Jefferson County, Alabama (the "Alabama Action").  (Aaronson Decl. ¶ 3).  The following day, Fuzzell filed a First Amended Complaint adding Cahaba as a plaintiff. (Aaronson Decl. ¶ 4).

Fuzzell and Cahaba's First Amended Complaint in the Alabama action asserts six causes of action, each of which is based entirely on and/or derives directly from Fuzzell's allegation that

---

[2] The Subject Vehicles and Equipment are described, in great detail, in paragraph 26 of the Complaint.

an oral agreement existed between Alcentra and Fuzzell pursuant to which he would receive equity interests in DRC in exchange for agreeing to become the company's Chief Operating Officer.  (Dkt. No. 17-2, ¶¶29-62).   The First Amended Complaint in the Alabama Action does not reference, let alone discuss, the Subject Vehicles and Equipment, the GMC Yukon Denali or Fuzzell and Cahaba's possession thereof. (*See* Dkt. No. 17-2).

On November 10, 2014, DRC moved to dismiss the First Amended Complaint in the Alabama Action for improper venue.  (Aaronson Decl. ¶ 5).  On April 8, 2015, the Circuit Court of Jefferson County, Alabama denied DRC's motion to dismiss the First Amended Complaint. (Aaronson Decl. ¶ 6). The very same day, Fuzzell and Cahaba filed a Second Amended Complaint in the Alabama Action. (Aaronson Decl. ¶7, Ex. B).

Fuzzell and Cahaba's Second Amended Complaint in the Alabama Action, much like their First Amended Complaint in that lawsuit, asserts six causes of action, each of which isbased on and/or dervies from Fuzzell's claim that an oral agreement existed between Alcentra, DRC and Fuzzell, pursuant to which Fuzzell would receive equity interests in DRC in exchange for, among other things, agreeing to become the company's Chief Operating Officer.  (*See* Aaronson Decl., Ex. B, ¶¶29-64). The Second Amended Complaint in the Alabama Action, just like the First Amended Complaint, does not reference, let alone discuss, the Subject Vehicles and Equipment, the GMC Yukon Denali or Fuzzell and Cahaba's possession thereof. (*See* Aaronson Decl., Ex. B)

DRC's time to answer, move or otherwise respond to the Second Amended Complaint in the Alabama Action expires on May 6, 2015.  (Aaronson Decl. ¶ 8).  DRC currently intends to move to dismiss the Second Amended Complaint and appeal the order entered by the Circuit

Court of Jefferson County, Alabama on April 8, 2015, denying DRC's motions to dismiss for improper venue.  (Aaronson Decl. ¶¶ 9, 10).

## ARGUMENT

**I.      DRC's Replevin Claims Are Not Compulsory Counterclaims In The Entirely Unrelated Alabama Action Concerning Fuzzell's Alleged Ownership Interests In DRC.**

Contrary to Defendants' contentions, DRC is not required to assert the claims asserted in this action as compulsory counterclaims in the Alabama Action.  This action and the Alabama Action do <u>not</u> arise out of the same transaction or occurrence—there is no logical relationship between this replevin action seeking to recover vehicles and equipment and the Alabama dispute over Fuzzell's alleged ownership interests in DRC pursuant to an alleged oral agreement. *Compare* DRC's Compl. [Dkt. No. 1] *with* Fuzzell and Cahaba's Compl. in the Alabama Action [Dkt. No. 17-2, Aaronson Decl., Ex. B].

Alabama's compulsory counterclaim rule tracks Rule 13(a) of the Federal Rules of Civil Procedure (the "FRCP"), whose purpose is "to prevent multiplicity of actions" by "[resolving] in a single lawsuit . . . all disputes **arising out of common matters**." *S. Constr. Co. v. United States ex rel. Pickard*, 371 U.S. 57, 60 (1962) (emphasis added); *see also Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 893 F.2d 26, 29 (2d Cir. 1990) ("The test for determining what constitutes the same transaction or occurrence is whether there exists a logical relationship between the claim and the counterclaim." (internal quotation marks omitted)).

A claim can only be a compulsory counterclaim under Alabama Rule 13(a) if it arises from "**the same transaction or occurrence**" as the subject of the opposing party's claim. *See* Ala. R. Civ. P. 13(a). (emphasis added).  In reviewing these issues, Alabama courts have interpreted this provision to avoid a "wasteful multiplicity of litigation on claims that arose from

a single transaction or occurrence." *Grow Grp., Inc. v. Indus. Corrosion Control, Inc*., 601 So. 2d 934, 936 (Ala. 1992).

The Alabama Supreme Court has concluded that a "counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim." *Ex parte Cincinnati Ins. Cos*., 806 So. 2d 376, 380 (Ala. 2001) (quoting Ala. R. Civ. P. 13(a), Committee Comments on 1973 Adoption of Rule 13, at P. 6); *see also Akin v. PAFEC, Ltd*., 991 F.2d 1550, 1561 (11th Cir. 1993).

Under the logical-relationship standard, a counterclaim is compulsory if:  "(1) its trial in the original action would avoid a substantial duplication of effort or (2) the original claim and the counterclaim arose out of the same aggregate core of operative facts."  *Ex parte Cincinnati*, 806 So. 2d at 380.  To determine whether the claims arise from the same core of operative facts, a court should ask if "the facts taken as a whole serve as the basis for both claims" or whether "the sum total of facts upon which the original claim rests creates legal rights in a party which would otherwise remain dormant." *Id*. (quoting *Ex parte Canal Ins. Co*., 534 So. 2d 582, 584 (Ala. 1988)).

DRC's claims in this action, which seek to recover DRC's equipment and vehicles, have nothing to do with the Alabama Action.  Each of Defendants' claims in their Second Amended Complaint (the operative pleading) in the Alabama Action—which was filed two months after DRC commenced this lawsuit—arise from an alleged oral agreement between Fuzzell and Alcentra, which would give Fuzzell ownership interests in DRC and thus allow Fuzzell to receive a percentage of DRC's profits.  Defendants do not make any allegations in their Second Amended Complaint in the Alabama Action concerning the Subject Vehicles and Equipment and GMC Yukon at issue in this replevin action.  (Aaronson Decl., Ex. B).

Defendants' Motion to Dismiss does not even argue that this replevin action and the Alabama Action somehow "overlap" or that they are  "logical[y] relat[ed]"--nor can they make such assertions.  Defendants instead wrongfully assert that this replevin lawsuit and the Alabama action are one and the same merely because DRC references—as background in its Complaint herein—the existence of the Interim Services Agreement, which agreement is also referenced in the First Amended Complaint in the Alabama Action.

DRC's reference to a background fact that is also discussed in the Alabama Action does not somehow transform DRC's replevin cause of action into one arising out of the "same transaction or occurrence" as the dispute between Fuzzell and Alcentra at issue in the Alabama Action, whereby Fuzzell alleges he is entitled to a portion of DRC's profits.  Ala. R. Civ. P. 13(a); *See also Adams v. Coblentz G.M.C. Truck Sales*, 506 So. 2d 1023, 1025 (Ala. Civ. App. 1987) (holding that plaintiff's claim seeking to recover for work and labor done in repairing defendant's truck, and the defendant's counterclaim seeking to recover for plaintiff's negligent failure to place antifreeze in the truck while it was in plaintiff's possession did "not arise out of the same core of operative facts."); *Desroches v. Ryder Truck Rental, Inc.*, 429 So. 2d 1010, 1011-13 (Ala. 1983) (holding that two claims, one for wrongful death against defendant, and the second claim against plaintiff for breach of a release agreement were "not logically related").

At bottom, Defendants' Motion to Dismiss fails because this action and the Alabama Action could not be any more different.  Pursuant to the standards under both Alabama Rule 13(a) and FRCP Rule 13(a), it is quite clear that DRC's claims are not compulsory counterclaims in the Alabama Action.

## II.    Defendants' Compulsory Counterclaims Argument Is Procedurally Inapposite Because DRC May Never Have To Assert Counterclaims In The Alabama Action.

Defendants further argue—*albeit unclearly*—that pursuant to Rule 13 of the FRCP, when a complaint contains claims that may be asserted as compulsory counterclaims in an earlier filed action, such claims must be dismissed.  (Mot. at 3-5).  This argument is inapplicable.

Defendants' argument ignores the well-established rule that a defendant need not assert a compulsory counterclaim unless and until a responsive pleading is required.  *See* FRCP 13(a)(1) (stating that a responsive pleading "must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party"); FRCP 12(b) (stating that a defendant may assert defenses by motion before filing a responsive pleading); *Thompson v. Carter*, 284 F.3d 411, 415 n.2 (2d Cir. 2002) (observing that a motion to dismiss is not a responsive pleading); *Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 56 (2d Cir. 1996) (holding that a motion to dismiss is not a responsive pleading); 3-13 Moore's Fed. Practice - Civil § 13.15 (3d ed. 1997) ("Federal courts ruling on the issue have uniformly held that a motion to dismiss pursuant to Rule 12 is not a responsive pleading.").

As explained above, the Defendants recently amended their complaint in the Alabama Action for the second time and DRC's time to file a response has yet to expire.  Should DRC's contemplated motion to dismiss be successful, DRC will never file a responsive pleading in the Alabama Action.

## III.    The "First-Filed" Rule Is Inapplicable Because This Replevin Lawsuit Is Entirely Different From The Alabama Action.

Defendants' assertion of the "first-filed" rule is unconvincing.  (Mot. at 3-5).  The general principle of the first-file rule is to avoid duplicative litigation.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  In applying the first-filed rule, courts can choose to enjoin, dismiss, or transfer a "proceedings involving the same parties and

issues" that "are pending simultaneously in different federal courts" "absent 'special circumstances' or a balance of convenience in favor the second." *Sotheby's, Inc. v. Minor*, No. 08 Civ. 7694, 2009 U.S. Dist. LEXIS 3509, at *3 (S.D.N.Y. Jan. 6, 2009) (internal citations omitted).

Here, the first-filed rule does not apply for at least two reasons.  First, this litigation and the Alabama Action are not duplicative at all—nor can Defendants argue to the contrary.  The Alabama Action was brought by Defendants[3] and stems from an alleged oral agreement between Fuzzell and Alcentra concerning Fuzzell's equity interest in DRC.  The present action, by stark contrast, has been brought by DRC to recover property, which DRC owns and which Defendants wrongfully possess.

While some of the parties herein are parties to the Alabama Action, the claims asserted and the relief sought in the two lawsuits are completely distinct.  As explained above, the Defendants do not make any allegations about the Subject Vehicles and Equipment or the GMC Yukon in the Alabama Action.  Thus, it is clear that this action and the Alabama Action are not duplicative, for purposes of the first-filed rule.

Second, the first-filed doctrine cannot be used to dismiss this action in favor of the Alabama Action, because the Alabama Action was brought in the wrong forum and in violation of the Release's mandatory forum selection clause.  (Compl. ¶ 20-21).[4]  The first-filed doctrine applies when truly duplicative claims have been **validly** filed in two different courts.  Indeed, courts regularly decline to apply the first-filed rule when the underlying agreement at issue contains a mandatory forum selection provision such as the Release does here. *See Nat'l Union*

---

3 As stated earlier, the initial complaint in the Alabama action was filed by Fuzzell only.  However, a day after filing in the initial complaint, Fuzzell filed an amended complaint adding Cahaba as a plaintiff.

4 Although DRC's motion to dismiss the first amended complaint was denied, DRC maintains that the Court's decision was in error and intends to appeal the order entered by the Circuit Court of Jefferson County, Alabama.

*Fire Ins. Co. v. Las Vegas Prof'l Football L.P.*, 409 F. App'x 401, 403 (2d Cir. 2010) (affirming district court's rejection of first-filed rule where the parties agreed to arbitrate in New York venue in forum selection clause); *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 107 (2d Cir. 2010) (affirming district court's rejection of the first-filed rule where the parties stipulated to New York venue in a forum selection clause).

Defendants' lengthy discussion of *Bonadio v. East Park Research, Inc.*, 220 F.R.D. 187, 188 (N.D.N.Y 2003), is misguided because that case is distinguishable for two reasons.  First, there was no mandatory forum selection clause at issue in *Bonadio*.  *See id.* at 188-89.  Second, the plaintiffs in *Bonadio* previously asserted counterclaims in the first-filed action that mirrored the claims in the second-filed complaint.  *See id.* at 189.

Therefore, given that Defendants have agreed to an exclusive New York forum, the first-filed rule does not apply.

## IV.  The Mandatory Forum Selection Clause Is Valid And Enforceable And Thus Requires That Defendants Litigate This Lawsuit In This Court.

"[F]orum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances," *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011) (quotation omitted).  In *M/S Bremen v. Zapata Off-Shore Co.*, the Supreme Court held that because forum selection clauses help to eliminate uncertainty in commerce, they are entitled to a presumption of enforceability, unless "enforcement would be unreasonable and unjust, or . . . the clause was invalid for such reasons as fraud or overreaching."  407 U.S. 1, 15 (1972); *see also, Bense v. Interstate Battery Sys of Am., Inc.*, 683 F.2d 718, 721 (2d Cir. 1982) (applying *M/S Bremen* standard to contractual dispute between domestic parties in non-admiralty context).

Courts give "substantial deference" to the forum selected by the parties, particularly where this choice "was made in an arm's-length negotiation by experienced and sophisticated businessmen." *New Moon Shipping Co. v. MAN B&W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997) (quoting *M/S Bremen*, 407 U.S. at 12). Further, courts within the Second Circuit rely on a four-part analysis in "determining whether to dismiss a claim based on a forum selection clause . . ." *Philips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).

Specifically, "the first inquiry is whether the clause was reasonably communicated to the party resisting enforcement." *Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d 714, 721 (2d Cir. 2013) (quoting *Philips*, 494 F. 3d at 383-84) (internal citations omitted). Next, the Court is required "to classify the clause as mandatory or permissive" and "decide whether the parties are *required* to bring any dispute to the designated forum or simply **permitted** to do so." *Philips*, 494 F. 3d at 383-84 (internal citations omitted)(emphasis in original). The third step requires the Court to determine "whether the claims and parties involved . . . are subject to the forum selection clause." *Id.* (internal citations omitted). Finally, the fourth step requires the Court "to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (internal citations omitted).

Defendants do not argue that DRC fails to satisfy any of the steps set forth in *Philips*. Moreover, Defendants ignore paragraphs 20 and 21 of the Complaint, which specifically identify and discuss the Release and, as Defendants know, the Release contains a mandatory forum selection clause.[5] Specifically, in their moving papers, Defendants state, "[i]n its Complaint,

---

[5] Though not legitimately in dispute, it bears mention that Plaintiff's allegations in the Complaint far exceed the pleadings standards set forth in *Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662

DRC only identified two contracts… 'a Bill of Sale… and [] an Interim Services Agreement.'"

This is demonstrably false.

The Complaint clearly alleges:

> 20.     Following extensive negotiations in which Fuzzell was represented by experienced counsel – Fuzzell executed an **Assignment Agreement and Release**, dated as of November 4, 2013.  By means of that document, Fuzzell conveyed his entire ownership interest in DRC to Alcentra and Alcentra released Fuzzell from his personal obligation to repay the loan. Pate did the same.  As a result, as of November 4, 2013, Alcentra owned 100% of DRC.

> 21.     Following execution of the **Assignment Agreement and Release**, Fuzzell continued to be employed as an executive of DRC until September 2, 2014, when his employment was terminated by DRC.

(Compl. ¶¶ 21, 22) (emphasis added).

Defendants do not dispute, nor can they genuinely dispute, that Fuzzell, individually and as the owner of Cahaba,[6] executed the Release.  Moreover, Defendants cannot argue that the

---

(2009).  Contrary to Defendants' suggestions, the Second Circuit has expressly rejected the notion that *Twombly* or *Iqbal* impose a heightened pleading standard:

> [T]he notion that *Twombly* imposed a heightened standard that requires a complaint to include specific evidence, factual allegations in addition to those required by Rule 8, and declarations from the persons who collected the evidence is belied by the *Twombly* opinion itself.

*Arista Records LLC v. Doe*, 604 F.3d 110, 119 (2d Cir. 2010).  The Second Circuit explained that it would be "impermissible" to require a plaintiff to plead any "specific evidence or extra facts beyond what is needed to make the claim plausible."  *Id.* at 120-21.  As such, DRC has pleaded enough facts detailing the Release, which contains the forum selection clause.  Defendants' arguments are without merit.

[6]  The Second Circuit has recognized that "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.,* 585 F.3d 696, 701 (2d Cir. 2009) (citing cases from the Third, Seventh, Eighth, Ninth, and Eleventh Circuit Courts of Appeals); *Metro-Goldwyn-Mayer Studios Inc. v. Canal+ Distrib. S.A.S.,* No. 07 Civ. 2918, 2010 U.S. dist. LEXIS 12765, at *15 (S.D.N.Y. Feb. 5, 2010) ("Under New York law, a signatory to a contract may invoke a forum selection clause against a non-signatory if the nonsignatory is 'closely related' to one of the signatories such that 'enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound.'"); *Thibodeau v. Pinnacle FX Inv.,* No. 08-CV-1662, 2008 U.S. Dist. LEXIS 90440, at *18 n.4 (E.D.N.Y. Nov. 6, 2008) ("[B]ecause defendants Bell and Francis are alleged to be principals of Pinnacle and are being sued in connection with their activities at Pinnacle, it was foreseeable to plaintiff that the forum selection clause would be applicable to any lawsuit against these closely-related individuals in connection with their work at Pinnacle."); *Weingrad v. Telepathy, Inc.,* No. 05 Civ. 2024, 2005 U.S. Dist. LEXIS 26952, at *15-17 (S.D.N.Y. Nov. 3, 2005) ("It is well established that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." (internal quotation marks omitted)).  Thus, Cahaba is

13

forum selection clause is anything but mandatory, or that the claims in the Complaint fall outside its expansive confines. Defendants' motion wholly fails to demonstrate "exceptional facts explaining why [Defendants] should be relieved from" their contractual duty under the Release to litigate in this Court. *Weiss v. Columbia Pictures Television Inc.*, 801 F. Supp. 1276, 1278 (S.D.N.Y. 1992).

## V.   Defendants Failed To Meet Their Legal Burden To Show That Venue Is Improper In This Court.

Plaintiff has made a *prima facie* showing of venue, and Defendants have failed to proffer anything to the contrary.[7]  It is well settled that the burden is on the moving party to establish that venue is improper. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *cert. denied*, 440 U.S. 908 (1979).  Indeed, when deciding a Rule 12(b)(3) motion to dismiss for improper venue, courts may rely on materials outside of the pleadings, such as affidavits. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).  When the Court does not conduct an evidentiary hearing on the motion and makes a venue determination on the basis of pleadings and affidavits, the plaintiff must only make a *prima facie* showing of venue. *See id.*

As a result, the Court "must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits." *United States EPA ex rel. McKeown v. Port Auth.*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001), *aff'd*, 23 F. App'x 81 (2d Cir. 2001).  In all cases, the Court must draw all reasonable inferences and resolve all factual conflicts in favor of plaintiff. *See, e.g., Jackson v. Am. Brokers Conduit*, No. 09-cv-6045, 2010 U.S. Dist. LEXIS 49008, at *4-5 (S.D.N.Y. May 13, 2010).

---

subject to the Release's mandatory forum selection clause.

[7] As an initial matter, Defendants waived the right to contest venue because they "irrevocably waive[] any claims that any such Proceeding has been brought in an inconvenient forum."  (Aaronson Decl., Ex. A).  Thus, the Court should reject Defendants argument that venue is improper for that reason alone. *See Export-Import Bank of the United States v. Agricola del Mar BCS, S.A. de C.V.*, 536 F. Supp. 2d 345, 350 (S.D.N.Y. 2008) ("An unconditional waiver of defenses is valid and enforceable when entered into voluntarily.")

In arguing the venue is improper, Defendants (i) refer to the Interim Service Agreement and Bill of Sale and state "[n]either of these contracts contains a forum selection clause" (Mot. at 5-6); (ii) argue that "DRC has failed to identity a contract containing the alleged New York forum selection clause" (Mot. at 6); and (iii) rely on the Interim Services Agreement's Alabama choice of law clause.  (*Id*).   Each of these arguments fails.

First, as explained above, paragraphs 20 and 21 in the Complaint clearly identify and discuss the Release, which contains an unambiguous mandatory forum selection clause providing that venue is appropriate in this Court.  (Compl. ¶¶ 20-21).   Second, Defendants incorrectly suggest that the Interim Service Agreement's Alabama choice of law clause is of importance; however, a choice of law clause is "**not** [to] be read as a forum-selection clause."  *Nat'l Patent Dev. Corp. v. Am. Hospital Supply Corp.*, 616 F. Supp. 114, 119 (S.D.N.Y. 1984) (emphasis added).   Third, a "plaintiff's choice of forum should **rarely** be disturbed."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (emphasis added).

Further, mandatory forum selection clauses are typically enforced unless it clearly can be shown that enforcement "would be unreasonable and unjust, or that the clause [i]s otherwise invalid for such reasons as fraud or overreaching."  *Bense v. Interstate Battery Sys. of Am.*, 683 F.2d 718, 721-22 (2d Cir. 1982).   DRC has chosen to litigate in this Court in accordance with the Release's forum selection clause.  Defendants' have made no showing why enforcement would be unjust.

As the Supreme Court stated in *Stewart Org., Inc. v. Ricoh Corp.*, "[t]he presence of a forum-selection clause … **will be a significant factor that figures centrally in the district court's calculus**."  487 U.S. 22, 29 (1988) (emphasis added).   Here, Defendants fail to cite to any authority that supports their arguments (nor can they).   Notably, Defendants do not offer any

justification under the federal rules or otherwise, for their naked assertion that this action should proceed in any other court.  As stated throughout, the mandatory forum selection clause in the Release is enforceable and this case should remain in this Court.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion should be denied in all respects.

Dated:  April 23, 2015
         New York, New York

**TROUTMAN SANDERS LLP**

By: *<ins>/s/ Matthew J. Aaronson</ins>*
     Matthew J. Aaronson
     Bennet J. Moskowitz
     Amanda L. Genovese
The Chrysler Building
405 Lexington Ave
New York, NY 10174-0700
(212) 704-6000